J-A15037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES F. DUFFY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MONIQUE A. DUFFY | : | No. 3070 EDA 2018 |

Appeal from the Order Entered September 13, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2007-26322

BEFORE:   BENDER, P.J.E., GANTMAN, P.J.E., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    **FILED SEPTEMBER 04, 2019**

James F. Duffy (Appellant) appeals, *pro se*, from the decree entered September 13, 2018 that divorced him and Monique A. Duffy (Wife) from the bonds of matrimony and distributed the marital assets and debts of the parties.  We affirm.

The facts underlying this appeal, taken from the trial court opinion (TCO), are as follows:

> The parties have engaged in substantial litigation as a result of the termination of their marital relationship in all areas of the Family Court: child custody, child support, divorce and no less than ten (10) Protection From Abuse (PFA) proceedings.[1]
>
> > [1] [T]he undersigned expended the equivalent of at least nine (9) days of protracted proceedings with the parties in 2016 and 2017.
>
> Initially, Father filed a Complaint for Custody in 2007.  A Complaint in Divorce was filed by Wife on July 13, 2011.  The

---

\* Retired Senior Judge assigned to the Superior Court.

Complaint was withdrawn via a Praecipe to Withdraw Complaint filed on February 9, 2012. The Complaint was then reinstated via a July 2, 2012 Stipulation (the aforementioned Stipulation provided that "the Complaint in Divorce should be reinstated and effective as though the Complaint was filed on March 20, 2012, the date of the parties' separation").

The overall delay in the resolution of this matter provided significant concern on the part of the undersigned in that, by the time of the 2017 protracted hearing on equitable distribution, a time period of over ten (10) years has elapsed since the first Family Court filing in 2007 (and over five (5) years from the date of the parties' separation in 2012).[2]

> [2] The divorce matter was delayed by Father's bankruptcy filings, numerous support exceptions and two (2) Superior Court appeals. …

Systemic of the litigious nature of this case, the distribution of property in this matter required, preliminarily, a determination as to the validity of two (2) agreements between the parties: a Pre-Nuptial Agreement dated December 29, 2005 (executed one (1) day prior to the date of marriage) and a Post Nuptial Agreement dated June 26, 2006 (executed six (6) months after the date of marriage).

The parties initially litigated the legitimacy of these two (2) Agreements before the Equitable Distribution Conciliator. This resulted in a very thorough three (3) page, single spaced, Report dated December 29, 2016 in which both Agreements were upheld as being valid.

Upon appearance before the undersigned at a Short List proceeding on June 21, 2017, to address the scheduling of a protracted hearing on Husband's Exceptions, the Court obtained a stipulation from the parties to accept the Conciliator's conclusion as to the validity of both Agreements.

Section 1., page 1, of the Pre-Nuptial Agreement contains the following language:

> "All property wholly owned by either party prior to marriage shall remain that Party's property. All property wholly acquired by either Party during the marriage shall remain that Party's property. No event shall change this term, and both Parties agree not to contest same."

Notably, there was no waiver in the Pre-Nuptial Agreement as to the increase in value of pre-marital property *during the marriage* (a clause that is so often included in many pre-nuptial agreements). Accordingly, the statutory provisions of the Divorce Code relating to measuring and determining the increase in value of non-marital property, as set forth in 23 Pa.C.S. § 3501 (a.1), shall apply.

Husband's main business interest, Protica, Inc., was started prior to the parties' marriage and, therefore, was covered by the Pre-Nuptial Agreement. As a result, only the increase in value of the business during the marriage is marital and capable of being subject to the equitable distribution process. However, Wife agreed to waive any and all interest, including any increase in value, in Protica, Inc. at the June 21, 2017 Short List proceeding. In return, all assets and debts associated with Protica are to remain Husband's sole and separate property with indemnification to Wife with respect to same. Since Husband testified that he still owes over One Million ($1,000,000) Dollars to Citibank per his bankruptcy reorganization plan, this particular indemnification may carry considerable value. On the other hand, Husband retained intellectual property associated with products he developed at Protica, Inc.[3]

> [3] Complicating the issues in this matter is the fact that Protica was valued at $10,000,000 in the Pre-Nuptial Agreement and Husband sold a 15% share of Protica for $1,000,000 in December 2012, several months after the parties' separation. At the hearing, Husband testified that there have been no payments to the investor on her investment.

Husband's other business, Duffy Real Estate, was formed during the marriage as a holding company for Protica's manufacturing facility in Whitehall, Pennsylvania. The transactions Husband facilitated between Protica and Duffy Real Estate are complex and consist of substantial funds into the millions of dollars. Some occur close in time to the date of the parties' separation, thereby raising suspicion. Wife argues that Duffy Real Estate was not covered in the Pre-Nuptial Agreement and that some of the transactions and the sale of the aforementioned real estate in Whitehall have, or will, ultimately inure to Husband's financial benefit. Husband argues that he surrendered ownership of the real property to a third party corporate entity, E-Capital, due to a default on loan payments and that he will not receive any funds

when the property is sold to another third party (to which he claims he has no interest).

In the case of the former marital residence, each party set forth arguments for the inclusion or exclusion from the marital estate. While it was acquired jointly in 2007, during the parties' marriage, it was later conveyed to Wife solely in June 2013 as part of a re-financing. Therefore, technically, only the increase in value of the property between the date of acquisition and the present would be marital property subject to equitable distribution. On the other hand, Husband argues it should be his separate property pursuant to a statement signed by Wife in 2008 acknowledging that it was acquired with Protica, Inc. proceeds.

At the Court's Short List proceeding on June 21, 2017, the Court conducted an extensive review of the assets, debts and credits in the within matter, on the record, in an effort to reach stipulations as to the values of assets and debts and to outline the specific issues in dispute in preparation for the protracted hearing. An Order was entered to this effect on that date.

A one (1) day protracted hearing was then conducted on September 21, 2017. Following testimony on that day, an additional trial day was scheduled for November 20, 2017 specifically for the purpose of providing Husband with additional time in which to clarify the purchase terms of the Whitehall property and to verify credit card debt in his name only.

TCO at 1-4. On September 13, 2018, the trial court issued an equitable distribution opinion and decree. On October 11, 2018, Appellant filed this timely direct appeal.[1]

Appellant presents the following issue(s) for our review:

1. Did the trial court abuse its discretion in dismissing material evidence related to the agreements between the parties, as well as evidence related to vehicles, the house, credit cards and other assets and liabilities, which the Plaintiff provided to this court?

_____

[1] Appellant timely filed his statement of errors complained of on appeal on November 14, 2018. The trial court entered its opinion on January 23, 2019. We note that Appellee did not file a brief.

- 4 -

2. Did the trial court abuse its discretion in failing to uphold a court order dated November 7, 2012, as well as the pre-nuptial and post-nuptial statements and agreements by and between the parties?

3. Did the trial court abuse its discretion by inappropriately applying an 80/20 split of the marital assets in defendant's favor?

4. Did the trial court abuse its discretion in ordering payment of counsel fees based on demonstrably false and misleading information?

Appellant's Brief at 8-9 (renumbered for ease of discussion).

"Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." *Mundy v. Mundy*, 151 A.3d 230, 235–36 (Pa. Super. 2016) (citation omitted). An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence. *Id*. at 236 (citation omitted).

> Our scope of review in equitable distribution matters is limited. Awards of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and will not be disturbed absent an error of law or abuse of discretion.

*Cook v. Cook*, 186 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted).

In his first appellate issue, Appellant contends that the trial court abused its discretion by failing to account for "material evidence" when devising its equitable distribution scheme. Appellant's Brief at 8. Before reviewing the issue on its merits, we must first determine whether Appellant preserved this issue for appellate review under Pa.R.A.P. 1925(b).

- 5 -

In **Commonwealth v. Lord**, [] 719 A.2d 306 ([Pa.] 1998), the Pennsylvania Supreme Court held that issues not included in a Pa.R.A.P.1925(b) statement are deemed waived on appeal. The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review. Pa.R.A.P. 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process.

**Commonwealth v. Lemon**, 804 A.2d 34, 36–37 (Pa. Super. 2002) (internal citations omitted); **see also Lord**, 719 A.2d at 308.

When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

**Lemon**, 804 A.2d at 37 (internal citations and quotations omitted).

Pa.R.A.P. 1925(b) exists primarily to require the appellant to identify with certainty each of the issues to be addressed on appeal. **Id** at 37. "An appellant must have an opportunity to frame his/her own issues which will guide the trial court's subsequent opinion." **Id**. at 38. It is not up to the trial court to frame the issues for an appellant, either by "guessing or anticipating." **Id**. "When an appellant fails to identify in a vague Pa.R.A.P. 1925(b) statement the specific issue he/she wants to raise on appeal, the issue is waived, even if the trial court guesses correctly and addresses the issue in its Pa.R.A.P. 1925(a) opinion." **Id**.

In his Rule 1925(b) statement of errors complained of on appeal, Appellant identified his first appellate issue as follows: "[T]he trial court abused its discretion in dismissing material evidence related to the agreements between the parties, as well as evidence related to vehicles, the house, credit cards and other assets and liabilities." Appellant's 11/14/2018 Rule 1925(b) Statement, 11/14/18, ¶ 2. The trial court addressed the issue of waiver pertaining to Appellant's first issue as follows:

> [Husband's issue] fail[s] to cite with any degree of specificity the material evidence that was purportedly precluded or dismissed, or in the least, the specific asset or liability affected in the [c]ourt's ultimate distribution to provide clarity to the [c]ourt in addressing this issue on appeal. Instead, Husband broadly indicates that said evidence related to "… the vehicles, house, credit cards and other assets and liabilities…". Theoretically, this could apply to a narrow list or the entire distribution scheme. In either case, the Court is wholly without the ability to read Husband's mind in its analysis on these points (See 11/14/18 Concise Statement, ¶ 1).
>
> Accordingly, [this issue] should [] be deemed waived for vagueness, as Husband fails to identify the issue with sufficient specificity.

TCO at 8-9 (footnote omitted).

We agree with the trial court's determination that Appellant did not preserve for appellate review the first issue in his 1925(b) statement. In his appellate brief, under this first issue, Appellant included five separate arguments for the following: the house, cars, jewelry, second mortgage and house appraisal. Appellant did not include the second mortgage, jewelry and the house appraisal, three of the subsections in his brief, in his 1925(b)

statement.[2]  While Appellant asserted that the trial court disregarded evidence related to the house and vehicles in his 1925(b) statement, he did not identify what evidence related to the house and vehicles that the trial court purportedly disregarded.[3]  Furthermore, while Appellant stated in his 1925(b)

_____

[2] We note that, of the five separate items discussed in Appellant's brief, Appellant did not include the second mortgage, jewelry and house appraisal within the statement of questions involved portion of his brief.  Therefore, the arguments pertaining to these items are waived for this separate basis. Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.")  **See also Krebs v. United Refining Co. of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006); **see also In re L.V.**, 209 A.3d 399 (Pa. Super. 2019).

[3] Additionally, even if we did not find the entire issue waived for vagueness, we would find the trial court that it did not abuse its discretion in including the house and cars in the marital estate.  In its 1925(a) opinion, the trial court states, "the Court very specifically addressed the vehicles (Point 2) and the house (Point 1) [in its Equitable Distribution Opinion and Decree]. . . . In reaching the distribution scheme [] the undersigned relied upon the testimony and evidence presented by both parties, and in doing so, determined the aforementioned scheme best achieved economic justice."  TCO at 8-9.  In its Equitable Distribution Opinion and Decree, the court discussed the house and cars as follows:

> The residence was purchased by the parties during the marriage in 2007 for $700,000.  Despite this fact, both parties argued that it should be excluded from the marital estate.  . . .  Wife asserts that the transfer [of the house to her name in 2013 in order to pursue a mortgage refinance process] results in [the house] being her separate property pursuant to the terms of the Pre-Nuptial Agreement as "transferred property."  . . . Husband alleges that the property is non-marital based on a July 30, 2008 statement signed by Wife ("H-5") acknowledging that the marital residence was purchased from Protica profits and, since Protica was listed as being non-marital in the Pre-Nuptial Agreement, the residence is therefore "non-marital."  . . . Notably, modifications to the Pre-Nuptial Agreement require both signatures (Husband did not sign

- 8 -

statement that the trial court ignored evidence pertaining to his "agreements,"

he did not specify which of the "agreements" between Appellant and Wife to

which his argument related, let alone the specific provision in those

> "H-5") and, further, "H-5" does not state that Husband owns the residence. . . . Wife's argument is dismissed as the refinancing was essentially an administrative transaction, to enable her loan to go through, and was without prejudice to Husband's arguments later. . . . The court finds as a matter of law that the martial residence is marital property.
>
> The parties agreed in the June 21, 2017 Order that there were two (2) vehicles that were marital property which Husband sold post-separation. At the hearing, the parties further stipulated that Husband received proceeds in the amount of $13,526.00.[12]
>
> > [12] At the protracted Hearing, Husband attempted to reverse the agreement reached at the June 2017 Short List proceeding, wherein it was agreed that the vehicles were marital, by virtue of the same Exhibit "H-5" referred to with regard to the marital residence.

Equitable Distribution Opinion and Decree, 9/13/18 at 13-15.

Credibility is properly evaluated by the fact-finder and not by a reviewing court:

> [I]t is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.

***Morgante v. Morgante***, 119 A.3d 382, 387 (Pa. Super. 2015) (internal citations omitted). The determination of whether an asset is part of the marital estate is a matter within the sound discretion of the trial court. ***Gilliland v. Gilliland***, 751 A.2d 1169, 1171 (Pa. Super. 2000) (internal citation omitted). We are also mindful that, "[i]n determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." ***Mundy***, 151 A.3d at 236 (internal citation omitted). Even if the issue were not waived, we would agree with the trial court's assessment of these items in its Equitable Distribution Opinion and Decree.

agreements. Accordingly, because we conclude that Appellant's 1925(b) statement is so vague as to be the functional equivalent of no 1925(b) statement at all, we find this first issue waived. *See Lemon*, 804 A.2d at 36–37; *see also Commonwealth v. Williams*, 204 A.3d 489, 495 (Pa. Super. 2019). Finally, while Appellant raised the issue of the trial court's consideration of evidence relating to the "credit cards" in his 1925(b) statement, no argument pertaining to the credit cards was included in his brief. Therefore, this issue is abandoned. *See Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014).

Appellant next argues that the trial court abused its discretion in failing to uphold a court order dated November 7, 2012, as well as the pre-nuptial and post-nuptial statements and agreements by and between the parties. Appellant argues that the trial court erred in failing to uphold the November 7, 2012 order, which stated that Appellant shall pay to Wife $50,000.00 as interim distribution, by not including the payment in its equitable distribution scheme.

We conclude that Appellant likewise waives this argument due to the vague presentation of this issue in the 1925(b) statement. Appellant presented this issue in his 1925(b) statement as follows:

> By abusing its discretion in failing to uphold a court Order dated November 8, 2012, as well as the Pre-Nuptial and Post-Nuptial Statements and Agreements by and between the parties.

Rule 1925(b) Statement, 11/14/18, ¶ 4.  The trial court discussed this issue

in its opinion as follows:

> The [c]ourt must, once again, preliminarily note the vagueness of Husband's issue raised herein.  . . . Husband once more fails to even loosely specify how the [c]ourt allegedly failed to uphold the Court Order of November 8, 2012, and the Pre- and Post-Nuptial Agreements.
>
> The [c]ourt is left to conjecture as to the crux of Husband's issue once more.

TCO at 11.  We agree with the trial court that this issue is waived for

vagueness.  To the extent that Appellant's issue pertains to the pre- and post-

nuptial agreements, Appellant, again, did not specify in his Rule 1925(b)

statement what he was challenging with regard to the pre- and post- nuptial

statements, nor what he was specifically challenging with regard to the

November 7, 2012 order.  Although the trial court correctly guessed that

Appellant was challenging the $50,000 interim distribution payment, the fact

that the trial court guessed correctly does not save a vague issue from

waiver.[4]  ***See Lemon***, 804 A.2d at 36–37.

_____

[4] Additionally, even if Appellant preserved this issue for review, we would conclude that the trial court did not abuse its discretion by excluding the interim payment from its equitable distribution scheme.  The trial court explained in its opinion that it did not include the $50,000 payment in the equitable distribution scheme because the origin of the money was not clear on the record.  TCO at 11-12.  Since there was no documentation provided as to the source of the payment, the trial court determined that it would not factor the payment into its equitable distribution scheme.  ***Id***.  The determination of whether an asset is part of the marital estate is a matter within the sound discretion of the trial court, and the trial court is free to

- 11 -

Appellant next argues that the trial court abused its discretion by inappropriately applying an 80/20 split of the marital assets in Wife's favor. Appellant argues that the trial court's "decision to apply an 80/20 split is heavily based on custody of the parties[,]" and points out that the parties shared custody of their children equally for the first five and a half years of separation. Appellant's Brief at 49-50.

When distributing marital property, the trial court has "the authority to divide the award as the equities presented in the particular case may require." ***Drake v. Drake***, 725 A.2d 717, 727 (Pa. 1999); ***Cook***, 186 A.3d at 1019. "Equitable distribution does not presume an equal division of marital property and the goal of economic justice will often dictate otherwise." ***Schenk v. Schenk***, 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted). [Appellate courts] "look at the distribution as a whole, in light of a trial court's overall application of the factors enumerated at" Section 3502(a) of the Domestic Relations Code, 23 Pa.C.S. § 3502(a).[5] ***Id.*** (citation omitted). The weight to

_____

believe all or none of the testimony presented to it and to make credibility determinations. ***Gilliland***, 751 A.2d at 1171; ***see Morgante***, 119 A.3d at 387; ***Mundy***, 151 A.3d at 236.

[5] Pursuant to Section 3502(a), when fashioning equitable distribution awards, the trial court must consider:

(1)   The length of the marriage.
(2)   Any prior marriage of either party.
(3)   The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

be given to these statutory factors depends on the facts of each case and is within the court's discretion. **Mercatell v. Mercatell**, 854 A.2d 609, 611 (Pa. Super. 2004) (internal citation omitted).

The trial court addressed the distribution of the marital estate as follows:

Here, the [c]ourt accessed the parties through a very detailed review of their assets and liabilities combined with their respective testimony regarding the marital estate, and thoroughly addressed every statutory factor enumerated at § 3502(a). In doing so, the [c]ourt placed a reasonable emphasis on the following: (i) the parties' amount and source of income, (ii) each party's opportunity for future acquisitions of capital assets and income, (iii) each party's contributions or dissipation of marital property,

---

(4)  The contribution by one party to the education, training or increased earning power of the other party.

(5)  The opportunity of each party for future acquisitions of capital assets and income

(6)  The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7)  The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8)  The value the property set apart to each party.

(9)  The standard of living of the parties established during the marriage.

(10)  The economic circumstances of the parties at the time the division of property is to become effective.

(10.1)  The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2)  The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11)  Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a)(1-11).

and (iv) which party would be serving as the primary custodian of the minor children.

The [c]ourt found the parties to have a great disparity in their earnings/earning capacity, Husband's net monthly income is Thirteen Thousand, Eight Hundred and Ninety-one ($13,891) Dollars as compared to Wife's net income of Four Thousand, Thirty-Six ($4,036) Dollars. Moreover, Husband is self-employed and primarily runs two businesses: Duffy Real Estate and Protica, Inc. which, combined with his business acumen and past earning history, presents him with more opportunities to generate substantial income and to more easily acquire capital assets. Wife, on the other hand, retained only the marital residence, which was primarily for the children's benefit as she is the primary custodian, and is employed by PRA Health Services as a consultant. As such, she does not have the same opportunities for income growth or acquisition of capital assets.

The [c]ourt further found credible Wife's testimony regarding Husband's dissipation, or in the least, his "creative manipulation" of assets she believed were marital, for the purpose of avoiding equitable distribution. . . . Accordingly, the [c]ourt acted within its discretion when it accessed the § 3502(a) statutory factors based on the evidence presented and determined the equities required an 80/20 split in favor of Wife.

TCO at 20-21.

Upon our thorough review of the record, we conclude that the trial court did not abuse its discretion in distributing the marital property. The court addressed each factor in Section 3502(a) (1)-(11) in its Equitable Distribution Opinion and Decree. Equitable Distribution Opinion and Order, 9/13/2018, at 5-13. Additionally, the court addressed Appellant's concern regarding the custody arrangement in its Equitable Distribution Opinion stating:

The children have resided at the former marital residence for nearly their entire lives. From 2012 through 2017, they resided there 50% of the time when the parties had joint physical custody. Prior to 2012, and since the August 31, 2017 Order [of custody], it has been their primary residence.

- 14 -

*Id*. at 13. Clearly, the trial court was aware of the fact that the parties shared joint custody of their children prior to the August 31, 2017 order, and we find it did not abuse its discretion in determining the weight of this factor. ***See Mercatell***, 854 A.2d at 611.

As his last issue, Appellant argues that the trial court abused its discretion in ordering payment of counsel fees based on demonstrably false and misleading information. Appellant argues that the trial court was wrong to blame him for delays in the divorce proceedings and Wife caused significant delays. Appellant argues that the court erred in awarding Wife $10,000 in attorney's fees because Wife only incurred $3,560 in attorney's fees directly related to his delay. Additionally, he argues that the post-nuptial agreement bars any award of attorney's fees.

"In proper cases, upon petition, the court may allow a spouse . . . reasonable counsel fees and expenses." 23 Pa.C.S. § 3702.

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be 'on par' with one another.
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.
>
> Counsel fees are awarded only upon a showing of need. In most cases, each party's financial considerations will ultimately dictate

- 15 -

whether an award of counsel fees is appropriate. Also pertinent to our review is that, in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder.

***Brubaker v. Brubaker***, 201 A.3d 180, 191 (Pa. Super. 2018) (citation omitted).

The trial court addresses the issue of counsel fees as follows:

[T]he court acted within its discretion in ordering Husband's payment of Wife's counsel fees, as the record strongly supports the Court's finding that Husband, while acting *pro se*, frustrated the divorce process at almost every turn. Wife's counsel was placed in the burdensome position of prolonged litigation due to Husband's failure or refusal, over the course of several years, to provide relevant financial information. This finding by the Court was further supported by the certified fees of Wife's counsel solely in connection with equitable distribution, which stretched all the way back to 2012 and amounted to a total sum of Thirty Six Thousand, One Hundred, Thirty-Nine Dollars and Twenty-Five Cents ($36,139.25). The undersigned's perception of the parties' dynamic, as noted in the Opinion subject to the within appeal, is further illustrative of Husband's behavior: "[m]uch of Husband's approach to financial disclosure, in both the child support and equitable distribution proceedings, has resembled the proverbial 'cat and mouse' exercise." (See Trial Court Opinion, 9/12/2018, Section IV. Attorney's Fees and Costs).

Notwithstanding the veritable mountain of evidence of Husband's vexatious behavior, the [c]ourt reasonably awarded only Ten Thousand ($10,000) Dollars in counsel fees to Wife (notably, not even one-third of the counsel fees incurred by her). In arriving at this amount, Court determined that Husband clearly had the ability to pay, as evidenced by the parties' agreement that Husband's net monthly income is Thirteen Thousand, Eight Hundred and Ninety-One ($13,891) Dollars, as compared to Wife's net monthly income of Four Thousand, Thirty-Six ($4,036) Dollars. (See Agreed Support Order, 10/26/2017). Moreover, Wife did not receive spousal support on APL, due to the terms of the Pre-Nuptial Agreement, throughout many years of a complex and litigious divorce which could have assisted her towards the payment of her legal fees. Wife also has primary physical custody

of the parties' two children, of whom most of her expendable monthly income is dedicated toward.

Husband also clearly possesses the business acumen and earning capacity to compensate this payment to Wife. This position is further reinforced by Husband's retention of his businesses, Duffy Real Estate and Protica, Inc., which provide him with the opportunities for future acquisition of capital assets and income. On the other hand, Wife has retained only the marital residence, primarily for the children's benefit. While Wife's income will likely remain the same, which is sufficient to support herself and the children for now, her salary and assets will not allow her the same opportunities as Husband in terms of acquiring capital assets in the foreseeable future. Accordingly, based on the overwhelming evidence demonstrating Husband's litigious behavior over the course of several years and the parties' disproportionate financial resources, the Court acted within its discretion in awarding Wife counsel fees in the amount of Ten Thousand ($10,000) Dollars.

TCO at 14-16. The trial court did not abuse its discretion in awarding $10,000 in attorney's fees to Wife. The trial court considered the factors outlined in *Brubaker* above, Appellant's vexatious conduct through the long history of the proceedings below, and the relative financial situations of the parties. The trial court had the opportunity to assess the parties during numerous hearings since January 2016. The record supports the trial court's findings regarding an award for Wife's counsel fees.

Additionally, Appellant's argument that the post-nuptial agreement precludes an award of counsel fees has no merit. Appellant points to the following language as supporting his assertion:

In the event Husband and Wife separate or divorce, Wife agrees to obtain gainful employment, and Husband will not be required to provide any financial support to Wife, with the exception of reasonable financial support for any children born from the union between Husband and Wife.

Post-Nuptial Agreement, 6/26/06, ¶ 2. However, this language does not address the potential award of counsel fees in a later proceeding, and simply addresses the future provision of financial support. Furthermore, Appellant cites no authority holding that such broad language in the post-nuptial agreement would preclude an award of attorney's fees in a divorce proceeding.

Under the factual circumstances present in this case, we find no error in the court's order awarding Wife $10,000 in attorney's fees, in light of Wife's expenditure of more than $30,000 in fees to litigate all the facets of the divorce action. ***See, e.g., Isralsky v. Isralsky***, 824 A.2d 1178, 1192 (Pa. Super. 2003) (finding record supported award of counsel fees to wife of $20,000 based, in part, on husband's vexatious conduct during litigation). Accordingly, we affirm the trial court's order in this regard, and, for all of the foregoing reasons, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/19