J-A20004-16

2016 PA Super 256

TODD W. MUNDY, SR.

Appellee

v.

AMY E. MUNDY

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1529 WDA 2015

Appeal from the Order September 11, 2015
In the Court of Common Pleas of Armstrong County
Civil Division at No(s): 2011-0113-CIVIL

BEFORE:  BOWES, STABILE AND MUSMANNO, JJ.

OPINION BY BOWES, J.:                    **FILED NOVEMBER 18, 2016**

Amy E. Mundy ("Wife") appeals from the September 11, 2015 order granting her divorce from Todd W. Mundy, Sr. ("Husband") and the concomitant equitable distribution that divided the marital estate.[1]  We vacate the order and remand for further proceedings.

---

[1] While the order of divorce is not listed on the trial court docket, the certified record contains a copy of the order that is emblazoned with a date stamp from the Prothonotary of Armstrong County that reads, "left for entry or filing [on September 11, 2015]."  As neither party nor the trial court dispute the validity of the order that was included in the certified record, in the interests of judicial economy, we "regard as done that which ought to have been done" and consider the order to have been entered on the date indicated.  ***McCormick v. Northeastern Bank of Pa.***, 561 A.2d 328, 329 n.1 (Pa. 1989).  Upon remand, the trial court is directed to ensure that the docket is updated accordingly.

Husband and Wife married on May 10, 2003, and separated on November 1, 2010. The parties have one child who was born prior to the marriage. Wife has two older children from previous relationships.

The parties courted for several years before getting married, and Husband resided at Wife's apartment for most of that period. On September 19, 2001, approximately twenty months before the marriage, Husband purchased a home for $65,000. He secured a mortgage for $63,050, and contributed between $5,000 and $10,000 toward the down payment and closing costs. Both the deed and the mortgage were in Husband's name alone. Immediately after the May 2003 marriage, Husband refinanced the mortgage for $69,000 and added Wife's name to the mortgage loan obligation but not the deed. In conjunction with the 2003 refinancing, the home was appraised at $98,000. Husband, Wife, and all three children resided in the house until separation. Throughout the time of cohabitation, Husband paid the mortgage of approximately $773 per month and contributed to expenses while Wife paid the utility bills, food, and the majority of household expenses.

Husband and Wife separated on November 1, 2010. From the date of separation until the middle of May 2014, Wife remained in sole possession of the home. She paid the mortgage, utilities, and property taxes for the residence while Husband rented an apartment. Within the last two months of Wife's residence in the home, she neglected to pay the mortgage, and the

water bill also became delinquent in the amount of $222. Wife repaid Husband for the water bill; however, the delinquent mortgage severely impacted Husband's credit score and his ability to refinance the mortgage or buy another home. Husband and Wife filed separate tax returns from 2010 to the present.

Husband took sole possession of the property in May of 2014. The house was unsanitary and in disrepair when he returned. Wife testified that she did not have time to clean the house because Husband took possession earlier than expected. Currently, Husband resides in the home and has paid the mortgage and all bills since Wife moved.

During the marriage, Wife attended nursing school. Pursuant to an agreement with the nursing school and University of Pittsburgh Medical Center ("UPMC"), UPMC paid Wife's tuition in consideration of her working for it upon graduation. Nevertheless, Wife acquired two student loans which she claims paid for household bills and expenses while she was in school. The first loan came from American Education Service ("AES"). Husband cosigned the AES loan. The second loan came from American Collegiate Service ("ACS"). Husband did not cosign the ACS loan. Wife made sporadic payments on both loans resulting in default on each. The AES loan is no longer outstanding due to the garnishment of Wife's 2014 income tax refund. A collection company is in control of the ACS loan and Wife claimed

that the balance was approximately $20,000. Since 2006, Wife has been employed as a registered nurse at Armstrong County Memorial Hospital.

On January 20, 2011, Husband filed for a no-fault divorce under § 3301(c) and (d) of the Divorce Code, 23 Pa.C.S. §§ 3101-3904. Husband requested equitable distribution of the marital property, temporary custody of the party's child, and alimony.[2] Following a conciliation conference, the trial court issued a consent order granting Husband and Wife shared custody of their child. On February 10, 2014, Husband filed a motion for appointment of a master to address the divorce and equitable distribution. On February 25, 2014, the trial court appointed James A. Favero, Esquire, as the master. The master's hearing was subsequently held on April 7 and May 18, 2015.

During the hearings, Husband testified on his own behalf and introduced a number of exhibits including, *inter alia*, photos of the squalid conditions in the home when he returned, mortgage statements, and two Experian credit reports listing the AES loan and mortgage as potential negative items due to late payments in 2012 and 2013. He also submitted a January 12, 2014 document informing him that his mortgage application had been denied because of delinquent obligations and collection actions. ***See***

---

[2] Husband dropped his claim for alimony and it is not at issue in this appeal.

Plaintiff's Exhibit 7. That document indicated that, as compiled by TransUnion, his credit score was 575. *Id*.

Wife testified on her own behalf and introduced evidence including the refinanced mortgage, her 2014 tax return, and a computer printout indicating that the AES loan was satisfied on January 9, 2015. While Wife stated her belief that she owed ACS approximately $20,000, she did not document the balance of that debt or establish the balance of the AES loan on the date of separation. Husband testified that Wife knew she would be responsible for the mortgage while she stayed in the home following separation. Wife acknowledged that she and Husband came to an "arrangement" wherein she paid the mortgage, utilities, and property taxes while she remained in the home. N.T., 5/18/15, at 152.

The master's report and recommendation was filed on July 9, 2015. The report included a detailed factual summary. The master proceeded to recommend a decree in divorce and a 50%-50% division of the marital estate after applying the equitable distribution factors outlined in 23 Pa.C.S. § 3502(a).[3] The master also determined the home to be a non-marital asset

_____

[3] The § 3502(a) considerations include:

(1) The length of the marriage.

(2) Any prior marriage of either party.

*(Footnote Continued Next Page)*

*(Footnote Continued)* ————————————

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a), (1)-(11).

because Husband acquired it prior to the marriage. Thus, the master only considered the increase in the property's value to be marital. The master's calculation of that value consisted of the difference between the purchase price of $65,000 and the $98,000[4] appraisal at the time of refinancing, for an increase in value of $33,000. Then, the master subtracted the $21,010 mortgage balance outstanding as of February 2014, as well as the two delinquent mortgage payments that Wife failed to submit while she resided in the home during separation ($1,628.70), to find a net marital value of $10,361.30.

The master distributed the marital assets and determined that Husband owed Wife $4,821.38, minus $1,500 for the condition in which Wife left the property. Thus, Husband retained sole ownership of his home and owed Wife $3,321.38. Both parties retained certain personal property and their respective retirement plans. The master did not recommend that Husband be responsible for the ACS loan because Wife failed to provide any documentation as to the loan's balance or use. Furthermore, the master did not consider the AES loan because Wife satisfied it in 2014 using her post-separation income.

_____

[4] This appraisal amount was the only evidence presented as to the property's value at the time of the master's hearing. Wife testified that she believed the home was still worth that amount. N.T., 5/18/15, at 158.

Wife filed timely exceptions to the master's report and recommendation. She challenged the master's determinations regarding the value of the home and allocation of the student loans. Following oral argument, the trial court entered an opinion and order which overruled Wife's exceptions in their entirety. Thereafter, on September 11, 2015, the trial court issued a final order that granted the divorce and applied the master's recommendations in equitable distribution. Wife filed this timely appeal.

On appeal, Wife presents the same issues she raised in her exceptions to the master's report:

1. For a complete and accurate analysis of marital property, and for an appropriate division of the marital estate, must the trial court consider the substantial marital equity acquired in a non-marital asset?

2. For a complete and accurate analysis of marital property, and for an appropriate division of the marital estate, must the trial court make an analysis of whether school loans are marital, how the funds were used, which party benefitted from the funds, which party guaranteed payment, and the best date of valuation?

Wife's brief at 6.

We are guided by the following principles in our review.

Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

> *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa.Super. 2005) (internal quotations omitted). When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Hayward v. Hayward*, 868 A.2d 554, 559 (Pa.Super. 2005).

*Smith v. Smith*, 904 A.2d 15, 18 (Pa.Super. 2006). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. *Morgante v. Morgante*, 119 A.3d 382, 387 (Pa.Super. 2015).

In her first issue, Wife asserts that the trial court erred in determining the net increase in the value of Husband's residence during the marriage.[5] Typically, the value of property in the marital estate is calculated by determining its current value and then subtracting encumbrances. However, when separate property is brought into a marriage, only the increase in value of the property during the marriage is considered marital property. Thus, the typical calculation of value subject to equitable distribution is insufficient in this situation because it does not account for the value of the separately held property at the time of the marriage.

_____

[5] Wife does not challenge the determination that the property was non-marital or assert that her inclusion on the refinanced mortgage created an ownership interest.

The Divorce Code does not set forth a specific method for valuing assets, and consistent with our standard of review, the trial court is afforded great discretion in fashioning an equitable distribution order which achieves "economic justice." **Smith**, **supra** at 18, 21. Similarly, "[i]n determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." **Id**. at 22. However, § 3501(a.1) of the Divorce Code, concerning the determination of the increase in value of nonmarital property, instructs,

> The increase in value of any nonmarital property acquired [prior to marriage] shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase. Any decrease in value of the nonmarital property of a party shall be offset against any increase in value of the nonmarital property of that party. However, a decrease in value of the nonmarital property of a party shall not be offset against any increase in value of the nonmarital property of the other party or against any other marital property subject to equitable division.

23 Pa.C.S. § 3501(a.1).

Herein, the parties effectively stipulated to the appraised value of the real estate of $98,000, even though that amount was determined seven and one-half years prior to the final separation and twelve years prior to the hearing on equitable distribution. While this figure is patently out of date, neither party presented a current valuation during the hearing nor objected to the divorce master's reliance upon the stale appraisal. Thus, we do not disturb it.

Wife does dispute, however, the trial court's decision to adopt the divorce master's use of the 2001 purchase price as a baseline to determine the increase in the value of Husband's home. It is her position that, "both the increase in equity and the increase in market value should be included in an analysis of the net portion designated as marital for inclusion in equitable distribution by the court." Wife's brief at 11. She continues that the trial court's calculation only accounted for the increase in the home's market value but ignored the concomitant increase in equity that accrued between the May 2003 marriage and November 2010 separation. Wife also highlights that she continued to pay down the mortgage while she resided in the home following the date of separation and asserts that she should be credited with her post-separation contribution to the nonmarital property.

In **Biese v. Biese**, 979 A.2d 892 (Pa.Super. 2009), which Wife cites in support of her position, we addressed whether the trial court erred in failing to follow the dictates of 23 Pa.C.S. § 3501(a.1) to use the lesser of the values vis-à-vis the separation date and the date of the evidentiary hearing in determining the marital portion of the increase in value of non-marital property. Our precise holding in **Biese** is not relevant herein. However, in reaching our conclusion that the court utilized the incorrect sum as the current value, we accepted the court's use of "the net home equity at the time of marriage" as the baseline amount for its computation. **Id**. at 898.

- 11 -

While the Divorce Code does not require a specific methodology for assessing an asset's value, it is beyond peradventure that the chosen methodology must represent an accounting of the asset's total value. Instantly, by focusing on the 2001 purchase price, the trial court's valuation methodology omitted from consideration the increase in equity accrued during the marriage. Stated plainly, while Husband is entitled to the premarital value of his home, Wife also is entitled to her share of any increase in equity that accumulated during the seven-year marriage.

While Wife argues accurately that both increased market value and increased equity must be assessed in the equitable distribution scheme, she neglected to provide in her brief an alternative calculation that would account separately for the increases. We observe, however, that Wife proffered a formula in her exceptions to the divorce master's recommendation. That calculation utilized Husband's equity in the home at the time of marriage, which she claimed was $1,950, rather than the purchase price of $65,000. The computation of those figures resulted in a net marital increase in the value of the home totaling $75,050—her share being $37,525. Although the certified record does not sustain Wife's assertion that Husband's net equity in the home at the date of the marriage was merely $1,950, we agree with the crux of her argument, which is that the trial court abused its discretion in failing to utilize Husband's equity in

the property at the time of the marriage as a baseline for its computation of the net marital equity.

Having found that the trial court erred in failing to employ an accepted methodology to determine the net marital value of Husband's premarital property, we remand this matter for the court to utilize an accurate calculation using the net home equity at the time of marriage. For purposes of explanation, we outline the correct formula.

As noted, *supra*, the first step in determining the marital portion of the increase in value is to determine Husband's equity in the property at the time of the marriage. **See Biese**, **supra**. Instantly, the most accurate representation of the pre-marital value of Husband's property is the 2003 appraisal that was conducted two-weeks after the marriage.[6] Recall that during May 2003, the same month as the parties' marriage, the home was appraised at $98,000 and Husband refinanced the mortgage for $69,000. Thus, at the time of the marriage, Husband's equity in the home was

_____

[6] Contrary to Wife's assessment of Husband's pre-marital equity, the baseline equity in the home was significantly greater than $1,950. Wife's rudimentary calculation was limited to the difference between the home's $65,000 purchase price and the $63,050 mortgage that Father secured to finance the purchase. That calculation ignores the drastic appreciation in premarital value that accrued between the September 2001 purchase and the May 2003 marriage.

$29,000, *i.e.* the difference between the fair market value ($98,000) and the encumbrance ($69,000).

Having determined Husband's net equity in the home at the time of marriage, we next calculate the equity in the property as of the date of separation. ***See Biese***, ***supra***. Wife contends that the fair market value of the real estate remains $98,000 and the record confirms that the mortgage was $21,010 as of February 2014.[7] Using these figures, the net equity at the time of separation equals $76,990 and after subtracting Husband's premarital equity in the home totaling $29,000, the marital portion of the increased equity is $47,990. Wife's equal share of that amount is $23,995.

The second component of Wife's argument regarding this issue is that the trial court erred in deducting from her share of the net increase in equity an amount equal to the mortgage delinquency that resulted from Wife's nonpayment of the post-separation mortgage. Wife contends that, rather than being penalized for the two missed payments, she should be credited for all of the post-separation payments that she made between November

_____

[7] In presenting their respective cases, the parties referenced only the mortgage balance as of February 2014. While we utilize this amount in explaining the correct methodology, we recognize that this figure is a poor representation of the mortgage balance as of the November 1, 2010 separation. If the trial court finds that additional evidence is required to fashion a comprehensive equitable distribution order upon remand, it may direct the parties to supplement the record in order to ensure that the figure actually used in the calculation is an accurate representation of the encumbrance as of the date of separation.

2010 and May 2014. For the reasons that follow, we find that the trial court's adjustments to Wife's marital share of the increased equity is not tantamount to an abuse of discretion.

This Court has repeatedly held that a dispossessed spouse is entitled to a credit against the spouse in exclusive possession for the fair rental value of the marital residence. *See e.g.*, *Lee v. Lee*, 978 A.2d 380 (Pa.Super. 2009) (quoting *Trembach v. Trembach*, 615 A.2d 33 (Pa.Super. 1992) ("the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit.")). As we reiterated in *Lee*, *supra*, "The basis of the award of rental value is that the party out of possession of jointly owned property . . . is entitled to compensation for her/his interest in the property." *Id*. (citation omitted). This rationale is even more convincing where, as here, the couple did not jointly own the property at issue.

In the case *sub judice*, Husband owned the property separately and was entitled to 100 percent of the post-separation value. Moreover, Wife agreed to pay the monthly mortgage obligation as well as taxes and utilities as part of the "agreement" that permitted her to stay in the home post-separation. *See* N.T., 5/18/15, at 152. Hence, Wife's post-separation mortgage payments, including the two payments that were not submitted to the mortgage company, were tantamount to rent owed to Husband for her

exclusive use of his property. Having agreed to satisfy the mortgage while she lived in the home, it would be inequitable to reward Wife for allowing the mortgage to become delinquent, causing harm to Husband's credit, and impacting his ability to purchase another home. Accordingly, the trial court did not err in declining to credit her for those payments in its equitable distribution of the marital estate. For these reasons, this aspect of Wife's claim fails.

Thus, in light of the trial court's failure to properly calculate the net marital increase in equity as of the date of separation, we remand the case for an accurate calculation of the marital portion of the increased home equity consistent with our discussion herein. However, we affirm the trial court's adjustments to Wife's share of the increased equity and its decision to forego giving Wife a credit for her post-separation mortgage payments.

Wife's second issue pertains to the student loans that she acquired during the marriage. Essentially, Wife contends that the trial court erred in burdening her with the entire amount of the student loan debt. *Hicks v. Kubit*, 758 A.2d 202 (Pa.Super. 2000) is the seminal case involving the assignment of student loan debt in equitable distribution. To be clear, the salient principles in *Hicks* are that student loan debt incurred during a marriage is a marital debt regardless of the purposes for which the money is actually expended; however, in assigning responsibility to repay the debt following divorce, the fact finder must look to which party benefited from the

education the loan facilitated. *Id*. at 205. In *Hicks*, we explained, "[W]hether the . . . debt is marital or not is of significance, but not ultimately determinative of who shall be responsible for its repayment." *Id*. Rather, "the ultimate distribution of either assets or liabilities . . . is to be based on the circumstances surrounding the acquisition of the debt or asset, along with all other factors relevant to fashioning a just distribution." *Id*. In essence, we reasoned that the spouse who received the exclusive benefit of the education is ultimately responsible for the portion of the student loan applied to education expenses. Hence, the *Hicks* Court held that, since the wife was the exclusive beneficiary of the education she received, she was responsible for the portion of the loan that went to that purpose. Accordingly, we did not disturb the trial court's equitable distribution scheme allocating to wife 100 percent responsibility for the balance of her student loan proceeds.

Instantly, both of Wife's loans are marital debt. However, consistent with *Hicks*, *supra*, the responsibility for repayment depends upon which party benefited from the education the loan facilitated and the circumstances surrounding the debt. Wife matriculated through a multi-year nursing program, attained the credentials of a registered nurse, and secured a position where she has worked since 2006. Thus, she clearly benefited from the education she received. Highlighting the fact that UPMC paid her tuition for nursing school, Wife asserts that the proceeds of both loans were used

for general household expenses rather than education. Thus, she argues, at least implicitly, that the UPMC tuition program, rather than her student loans, facilitated her education. For the following reasons, we disagree.

First, although the UPMC tuition program paid for the cost of Wife's coursework, the student loans that Wife obtained from AES and ACS undeniably helped facilitate her education. Even to the extent that the student loans were not applied to Wife's tuition, the loans permitted her to remain a fulltime student over the several years and to focus on her studies without having to engage in outside employment to help support the family. Wife confirmed this reality during the equitable distribution hearing. She testified, "[the loans] were offered to us through school and since I couldn't work fulltime and go to school fulltime, we needed to have a way to still support the household." N.T. 5/18/15, at 156-157. Second, and more importantly, it is unclear from the certified record whether UPMC paid **all** education-related expenses or simply Wife's tuition. As the trial court accurately observed, Wife neglected to provide any evidence to document how the proceeds of either loan was consumed. Wife testified that she used the loans to cover household expenses, but she did not state whether the loans were used for that purpose exclusively.

Wife's failure to present a scintilla of evidence to document the use of the loan proceeds, or even establish the remaining balance on the ACS loan or the balance of the AES loan at the time of separation, is fatal. As the

fact-finder, the master was free to believe some, all, or none of the assertions made by Wife pertaining to the loans, and we "will not disturb the credibility determinations of the court below." *Smith*, 904 A.2d at 20. Here, the trial court determined that Wife did not provide the requisite evidence to support her claim regarding the use of the loan proceeds or the amount of the student-loan debt owed. As the certified record confirms the trial court's determination regarding the lack of documentation, we will not disturb it.[8] *See Anderson v. Anderson*, 822 A.2d 824, 830 (Pa.Super. 2003) (declining to take an alleged debt into consideration in equitable distribution scheme where "record failed to establish documentation of the debt…").

Order vacated. Matter remanded for further proceedings.

Jurisdiction relinquished.

_____

[8] The trial court concluded, in part, that, since Wife paid off one of the loans in 2014, she was not entitled to receive credit for this debt during equitable distribution. In light of our discussion in *Hicks*, *supra*, we disagree with the court's statement of the law. Nevertheless, we sustain the trial court's denial of this aspect of Wife's exceptions on the grounds that Wife failed to document that the loan proceeds went to pay for household expenses exclusively or establish the balance of the loans at the time of separation.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/18/2016</u>