J-A30019-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| MICHELE KUDALSKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICHOLAS E. KUDALSKY | : | |
| | : | |
| Appellant | : | No. 800 MDA 2019 |

Appeal from the Decree Entered April 23, 2019
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2015-FC-41015

BEFORE: DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: FILED MARCH 18, 2020

Nicholas E. Kudalsky (Husband) appeals from the order denying in part and granting in part his exceptions to the Master's recommendations as to equitable distribution, and finalizing the divorce action commenced by Michele Kudalsky (Wife). Husband argues that he is entitled to an additional $95,000 credit for nonmarital funds that he paid towards a commercial loan related to the parties' marital residence. We affirm.

The trial court summarized the facts and procedural history of this matter as follows:

By way of background, the parties were married on August 8, 2008 and separated on July 29, 2015. This action was commenced by [Wife] by the filing a Complaint in Divorce on August 7, 2015. On May 30, 2017, William Hall, Esq. ([the Master]) was appointed as the divorce master in this matter to decide issues of divorce, alimony, costs and expenses, attorney's

_____

[*] Retired Senior Judge assigned to the Superior Court.

fees, and equitable distribution. Hearings were held before the Master on December 13, 2017 and January 25, 2018. The parties then submitted briefs and the record was closed for a decision on May 29, 2018. The Master issued his Report and Recommendation on September 6, 2018.

During the hearing before the Master, [Husband] testified that he came into the marriage with an ownership interest in two (2) parcels of real estate. Husband further testified that he was the sole owner of real estate located at 505 Shady Lane Road, South Abington Township, Pennsylvania ([the] Shady Lane Property). Husband stated that he purchased the Shady Lane Property for $24,900.00 on May 6, 2005, which is solely deeded in Husband's name. Husband also held 1/3 ownership interest with his parents in a property located at 330 Bailey Street, Clarks Summit, Pennsylvania ([the] Bailey Street Property).

Additionally, Husband entered the marriage with a sole ownership interest in Kokopelli Enterprises, Inc. (Kokopelli Enterprises). Prior to the marriage, on August 13, 2007, Kokopelli Enterprises opened a $195,000.00 commercial line of credit at Penn Security & Trust Company. . . . Husband testified that the line of credit was eventually used to build a spec home on the Shady Lane Property.

On September 22, 2009, Husband's parents transferred their 2/3 interest in the Bailey Street Property to Husband.[1] On September 29, 2009, Husband sold the Bailey Street Property for $140,901.71. On October 29, 2009, Husband made a payment of $95,000.00 from the proceeds of the sale of the Bailey Street Property towards the commercial line of credit held by Kokopelli Enterprises, which left a balance of $100,000.00. Then, Husband converted the commercial line of credit of $100,000.00 to a commercial mortgage on the Shady Lane Property. Husband used the remaining proceeds from the sale of the Bailey Street Property in the amount of $42,087.69 directly on the Shady Lane Property for completing construction of the marital residence.

Additionally, during the hearing before the Master, Wife testified that she helped improve the Shady Lane Property over the course of the parties' marriage, as it was used as their marital residence.

---

[1] The parties lived at the Bailey Street Property until 2009. Husband testified that he was unable to sell the spec house on the Shady Lane Property, so he sold the Bailey Street Property and the parties moved into the spec house at Shady Lane. See N.T., 1/25/18, at 136.

Wife testified that she purchased items for the property such as mulch, perennials, pavers, sheetrock, carpet and paint. Wife also stated that she assisted in landscaping the Shady Lane Property. Further, Wife testified that she paid the mortgage on the Shady Lane Property. Husband agreed that Wife did make loan payments from December of 2009 to July of 2015, totaling $34,000.00. Although Wife also stated that she paid half of the utilities and taxes on the Shady Lane Property, she failed to produce any supporting evidence at the Master's hearings. Thus, the Master did not consider such.

The Master issued his Report and Recommendation on September 6, 2018. The Master stated in his Report and Recommendation that

> [t]he property at 505 Shady Lane Road received a net increase in value during the course of the marriage by $117,100.00. The current value of the property with improvement is $230,000.00. The premarital purchase price of the lot was $24,900.00. There was a gross increase in value of $205,100.00. The current mortgage on the property is $88,000.00. The net increase in value is $117,100.00. This increase in value is attributable to both parties. Husband constructed the home. Wife assisted in finishing the home and paid the mortgage for several years.

> The Master found that,[2] "Husband is to pay Wife the sum of $58,550.00 to satisfy her marital interest in the increase in value of the premarital property located at 505 Shady Lane Road."[3]

_____

[2] The Master noted that "[t]his was not a long marriage and the parties did bring most of their property into the marriage. A distribution of marital property where both parties retain [their own property], while compensating the other party for their marital interest would be the most equitable in this circumstance." See Master's R. & R. at 10. As such, the Master stated that Husband would retain, among other things, Kokopelli Enterprises, Inc., along with its equipment and debt. Id. at 11.

[3] The Master also found that "[a]ny interest [Wife] may have had in an increase in value of the Bailey Street Property was transferred to the Shady Lane [P]roperty when the proceeds from the sale of the Bailey Street Property

> Husband filed exceptions to the Master's Report and Recommendation on September 25, 2018.[4] On October 5, 2018, Wife filed an answer to [Husband's exceptions.] Oral arguments on Husband's exceptions were held before [the trial court] on January 14, 2019.

Trial Ct. Op. at 1-4 (record citations omitted).

On March 8, 2019, the trial court issued an order granting in part, and denying in part, Husband's exceptions to the Master's Report. The trial court found that Husband was entitled to an additional $42,087.69 based on the construction expenses he incurred for the Shady Lane Property. Trial Ct. Order and Mem., 3/8/19, at 4.

The trial court explained:

> Husband came into the marriage with [a] 1/3 interest in [the] Bailey Street Property with his parents. Husband's parents then transferred their interest in the Bailey Street Property solely to Husband. Husband sold the Bailey Street Property and used

_____

were used to pay for the Shady Lane Property." See Master's R. & R. at 10 n.1.

[4] Husband raised the following exceptions to the Master's Report:

1. The Master abused his discretion and misapplied the law by inappropriately crediting proceeds from nonmarital property to the net increase in [Husband's] property used as the marital residence.

2. The Master abused his discretion when his findings and recommendations regarding crediting proceeds from [Husband's] nonmarital property to the net increase in the marital value of [Husband's] property used as the marital residence are not supported by the record.

See Husband's Exceptions to Master's R. & R., 9/25/18, at 1.

$42,087.69 of the proceeds from the sale to complete construction on Shady Lane Property. This [c]ourt finds the Master erred in including the proceeds of $42,087.69 from the sale of the Bailey Street Property to determine the net increase in value on the Shady Lane Property. The current value of the premises is $230,000.00 minus the pre-marital purchase price of the lot was $24,900.00 and construction of $42,087.69 from the Bailey Street Property proceeds brings the gross increase value of $163.012.31. The current mortgage on the property is $88,000.00. The net increase value is $75,012.31 and, as discussed above, is attributable to both parties.

Id. at 4-5.

However, the trial court agreed with the Master's finding that the

proceeds of $95,000.00 from the Bailey Street Property used by Husband towards his business line of credit should not be deducted from increase of value on the Shady Lane Property. Even though the line of credit was ultimately converted to a commercial mortgage on [the] Shady Lane Property, Husband's decision to pay $95,000.00 on the line of credit does not affect the increasing value of the Shady Lane Property. Therefore, this [c]ourt finds Husband shall pay Wife the sum of $37,506.15 to satisfy her marital interest in the increase in value of the pre-marital property of Shady Lane Property.

Id. at 5. On April 23, 2019, the trial court entered a divorce decree incorporating the March 8, 2019 memorandum and order.

On May 14, 2019, Husband filed a timely notice of appeal. He also timely filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Husband's claims.

Husband raises the following issues on appeal:

1. Whether the [trial court] abused its discretion or misapplied the law in its order of April 23, 2019 by inappropriately crediting proceeds from nonmarital property to the net increase in [Husband's] property used as the marital residence?

- 5 -

2. Whether the [trial court] abused its discretion in the order of April 23, 2019 when its determination to credit proceeds from the sale of [Husband's] nonmarital property to the net increase in the marital value of [Husband's] property used as the marital residence is not supported by the evidence of record?

3. Whether the [trial court] abused its discretion in the order of April 23, 2019 by treating nonmarital proceeds from the sale of nonmarital property differently[,] when differentiating is not supported by the evidence of record?

Husband's Brief at 4 (some formatting altered).

Husband contends that the trial court should have given him an additional $95,000 for the nonmarital funds that he used to pay down his business line of credit. Id. at 22. He argues that because the line of credit was converted to a mortgage on the Shady Lane Property, his payment directly increased the value of the property by reducing the mortgage by $95,000. Id. at 26-27. Further, he asserts that because that $95,000 came from the sale of Bailey Street, which was nonmarital property, the proceeds remained "nonmarital property as defined by [Section 3501(a)] and as such [did] not lose [its] nonmarital status or character and cannot be subject to equitable distribution." Id. at 31. Based on these claims, Husband argues that he was entitled to an additional $95,000 credit toward his equity in the Shady Lane Property, and that there were no funds left for purposes of equitable distribution. Id. at 28.

Wife responds that the trial court's decision was "equitable," as it "accounted for each [party's] contributions, including [Wife's] substantial mortgage payments and other contributions to the property." Wife's Brief at

4. She asserts that "the trial court effectuated economic justice between the parties" and did not abuse its discretion. Id.

In reviewing a trial court's equitable distribution order, we are guided by the following principles:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Childress v. Bogosian, 12 A.3d 448, 455 (Pa. Super. 2011) (internal citations, brackets, and quotation marks omitted). Moreover, it is within the discretion of the trial court to weigh the evidence and make credibility determinations, and this Court will not reverse those determinations where they are supported by the evidence. Id. (citation omitted).

In an action for divorce or annulment, "[t]he court must first determine what is marital property, and then apply the factors for distribution set forth in the Divorce Code." Smith v. Smith, 749 A.2d 921, 926 (Pa. Super. 2000).

Section 3501 of the Divorce Code provides, in relevant part, as follows:

(a) General rule.—As used in this chapter, "marital property" means all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3) as measured and determined under subsection (a.1). However, marital property does not include:

(1) Property acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage.

\* \* \*

(3) Property acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property.

\* \* \*

(a.1) Measuring and determining the increase in value of nonmarital property.—The increase in value of any nonmarital property acquired pursuant to subsection (a)(1) and (3) shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase. Any decrease in value of the nonmarital property of a party shall be offset against any increase in value of the nonmarital property of that party. However, a decrease in value of the nonmarital property of a party shall not be offset against any increase in value of the nonmarital property of the other party or against any other marital property subject to equitable division.

23 Pa.C.S. § 3501(a), (a.1).

"Typically, the value of property in the marital estate is calculated by determining its current value and then subtracting encumbrances. However, when separate property is brought into a marriage, only the increase in value of the property during the marriage is considered marital property." Mundy v. Mundy, 151 A.3d 230, 236 (Pa. Super. 2016).

When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even [though] the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.

Biese v. Biese, 979 A.2d 892, 897 (Pa. Super. 2009) (citations and quotation marks omitted).

After identifying the property that is included in the marital estate, a court must "equitably divide, distribute or assign, in-kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors." 23 Pa.C.S. § 3502(a).

Here, the parties agree that the Shady Lane Property was Husband's nonmarital property and that only the increase in value was subject to equitable distribution. See 23 Pa.C.S. § 3501(a.1). However, Husband argues that he is entitled to an additional $95,000 credit towards his interest, which would deplete any marital equity in Shady Lane Property. Husband's Brief at 27-28.

The trial court addressed Husband's claim as follows:

This [c]ourt believes Husband is attempting to deplete any and all equity in the net increase in value of the Shady Lane Property for purposes of equitable distribution by requesting credit for nonmarital funds that were not used directly towards the Shady Lane Property, which [] is contrary to law and does not effectuate economic justice between the parties.

* * *

> This [c]ourt did not err in differentiating the proceeds of the Bailey Street Property. Rather, Husband chose to use the nonmarital proceeds of the Bailey Street Property in two different manners causing nonidentical outcomes. Specifically, as discussed above, Husband used his nonmarital proceeds of $42,087.69 from the sale of his premarital property of Bailey Street Property directly towards construction on his other premarital property, [the] Shady Lane Property.

Trial Ct. Op. at 6-7, 9.

Based on our review of the record, we discern no abuse of discretion by the trial court in declining to credit Husband with an additional $95,000. See Childress, 12 A.3d at 455. The trial court agreed with the Master that Husband and Wife both contributed to the increased value of the Shady Lane Property and should both receive a portion of that increase. Trial Ct. Op. at 7. Nonetheless, the trial court agreed with Husband that he was entitled to an additional $42,087.69 for the money he used to complete construction on the Shady Lane Property.[5] However, the trial court explained that Husband could not "deplete any and all equity" in the Shady Lane Property by also requesting a credit for the $95,000 in nonmarital funds that he paid towards his business loan. Id. Therefore, in order to effect economic justice, the trial court denied Husband's request for an additional $95,000 credit. See Trial

_____

[5] It appears that the trial court awarded Husband $42,087.69 against the increase in value of the Shady Lane Property, rather than from the balance of the marital estate. However, because neither party challenges the trial court's action in this regard, we do not disturb it.

Ct. Op. at 7. The trial court did not abuse its discretion in fashioning an equitable distribution scheme that recognized both parties' contributions. See Childress, 12 A.3d at 455. Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/18/2020