J-S07020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CINDY L. YEAGER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE YEAGER, JR. | : | No. 1102 WDA 2021 |

Appeal from the Decree Entered September 14, 2021
In the Court of Common Pleas of Crawford County
Civil Division at No(s):  F.D. No.  2018-355

BEFORE:   OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: JUNE 2, 2022**

Cindy L. Yeager ("Ms. Yeager") appeals from the decree finalizing her divorce from Bruce Yeager, Jr. ("Mr. Yeager") entered after the trial court denied her exceptions to a master's recommendations for equitable distribution.  We vacate and remand for proceedings consistent with this memorandum.

Ms. and Mr. Yeager married in 2005.  During their marriage, they lived at the Adamsville home that Mr. Yeager purchased before marriage ("the Adamsville home").  They separated in October 2018, and Ms. Yeager filed a divorce complaint that same month.  The trial court appointed a master, who held a hearing and permitted the parties to supplement the record.  The master thereafter entered an amended report and recommendation.  Therein,

_____

[*] Retired Senior Judge assigned to the Superior Court.

the master noted that this was the parties' first marriage and that the parties had no children.  **See** Amended Master's Report, 11/2/20, at 1.  The master reviewed the parties' ages, current jobs, benefits, and health, as well as their opportunities for future acquisitions of assets and income.  **See id**. at 1-4. The master recommended a 50-50 division of the marital estate with Mr. Yeager to pay $110,878 to Ms. Yeager by the entry of a qualified domestic relations order ("QDRO").[1]  **See id**. at 4-6.

The master found that the value of the Adamsville home increased by $51,000 during the marriage.  **See id**. at 2, 4.  Additionally, the master determined that Mr. Yeager had a loan or line of credit with Greenville Savings ("the Greenville Savings debt") with a balance of $6,894 when the parties separated.  **See id**. at 5.

Ms. Yeager timely filed exceptions challenging the master's valuation of the Adamsville home,[2] the allocation of the Greenville Savings debt as a marital debt, and the failure of the master to afford her "any liquid assets" under the recommended distribution scheme.[3]  **See** Exceptions, 11/23/20, at

---

[1] "A QDRO is an order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under [a pension] plan." **Conway v. Conway**, 209 A.3d 367, 372 (Pa. Super. 2019) (internal citations, italics, and quotation marks omitted).

[2] The trial court, in its Pa.R.A.P. 1925(a) opinion, requests a remand for a recalculation of the increase in the value of the Adamsville home.

[3] Ms. Yeager was not clear in her reference to liquid assets in her exceptions. However, she subsequently filed a brief in support of her exceptions, in which

1. The trial court denied the exceptions, and on September 14, 2021, it entered the final divorce decree. Ms. Yeager timely appealed, and both she and the trial court complied with Pa.R.A.P. 1925.

Ms. Yeager raises the following issues for review:

1. Whether the trial court erred in dismissing the exceptions to the master's report which erred with respect to the valuation of the increase in value of [Mr. Yeager]'s premarital residence by failing to consider the amount of the outstanding mortgage at the time of marriage.

2. Whether the trial court erred in dismissing the exceptions to the master's report which erred in crediting to [Mr. Yeager] the Greenville Savings line of credit debt where such debt was neither established to be marital nor sufficiently established by testimony or evidence.

3. Whether the trial court erred in dismissing the exceptions to the master's report which erred in failing to equitably divide marital assets in a manner to achieve economic justice.

Ms. Yeager's Brief at 7-8 (renumbered and unnecessary capitalization omitted).[4]

Ms. Yeager's issues challenge the trial court's equitable distribution of the marital estate. Our standard of review in assessing the propriety of the trial court's equitable distribution award is whether the court abused its discretion by misapplying the law or failing to follow proper legal procedure.

_____

she asserted that a 60-40 equitable distribution was more appropriate and sought a payment from Mr. Yeager of $171,438 instead of the $110,878 recommended by the master in order to accommodate her need to purchase a new home. **See** Brief in Support of Exceptions, 8/24/21, at 8, 12, 16 (unnumbered).

[4] Mr. Yeager did not file a brief in this appeal.

*See Mundy v. Mundy*, 151 A.3d 230, 235-36 (Pa. Super. 2016).  This Court will not find an abuse of discretion lightly.  *See id*.  Rather, an abuse of discretion requires a showing the trial court overrode or misapplied the law, or that its judgment was manifestly unreasonable or the result of partiality, prejudice, bias or ill will.  *See Hess v. Hess*, 212 A.3d 520, 523 (Pa. Super. 2019).

A master's report and recommendation is advisory.  *See Cook v. Cook*, 186 A.3d 1015, 1026 (Pa. Super. 2018).  However, because the master has the opportunity to observe the behavior and demeanor of the parties, a court should give the fullest consideration to the master's report and recommendation especially on questions concerning the credibility of witnesses.  *See id*.

In her first issue, Ms. Yeager claims that the trial court improperly calculated the increase in value of the Adamsville home.

Section 3501(a.1) of the Divorce Code statute[5] provides that the increase in value of property which a party acquires before marriage is marital property.  *See* 23 Pa.C.S.A. § 3501(a), (a.1).  The measure of the increase in the value of a home which a party acquired before marriage must include a calculation of the party's net equity in the property at the time of marriage.  *See Mundy*, 151 A.3d at 237-38 (concluding that the trial court erred by

---

[5] *See* 23 Pa.C.S.A. §§ 3101-3904.

using the purchase price of a house in determining its net equity value and failing to include the encumbrances on the home in its calculation).

Ms. Yeager asserts that the master erred in using Mr. Yeager's purchase price of $49,000 to determine the increase in the value of the Adamsville home, because when Mr. Yeager bought the home one and one-half years before the marriage, he paid $10,000 for the home and obtained a mortgage of $39,000. **See** Ms. Yeager's Brief at 18-19; Trial Court Opinion, 11/15/21, at 1-3. Because the master failed to determine how much of the $39,000 mortgage Mr. Yeager had paid before the marriage, it was error to use $49,000 as Mr. Yeager's net equity in the home at the time of the marriage. **See Mundy**, 151 A.3d at 237-38. Accordingly, we vacate that portion of the trial court's decree allocating the increase in value of the Adamsville home and remand for a recalculation based on Mr. Yeager's net equity in the home at the time of the marriage.

In her second issue, Ms. Yeager challenges the allocation of the Greenville Savings debt. This Court has held that debts that accrue to divorcing parties jointly before separation are marital debts. **See Biese v. Biese**, 979 A.2d 892, 896 (Pa. Super. 2009); **see also Goodwin v. Goodwin**, 244 A.3d 453, 462 (Pa. Super. 2020), *appeal granted on other grounds*, 130 MAL 2021, 2021 WL 4204802 (Pa. Sept. 16, 2021) ("debts incurred during marriage are marital debt, regardless of which party incurred them" (citation omitted)). A court may reject a claim of marital debt that a party fails to prove to a reasonable certainty with adequate documentation.

*See Anderson v. Anderson*, 822 A.2d 824, 830 (Pa. Super. 2003). The categorization of a debt as marital is not dispositive as to which party is liable for its satisfaction. *See Biese*, 979 A.2d at 896.

Ms. Yeager claims that it would be unjust to require her to share in the Greenville Savings debt because Mr. Yeager failed to provide any evidence concerning the debt, his testimony was too indefinite to prove the existence and nature of the debt, and she had no knowledge of it. Ms. Yeager's Brief at 21.

The trial court rejected Ms. Yeager's exception to the master's findings regarding the Greenville Savings debt. *See* Trial Court Opinion, 11/15/21, at 3. It explained that Mr. Yeager presented a statement for the Greenville Savings line of credit that satisfied the master that the debt was incurred during marriage and continued to exist at the time of the parties' separation. *See id*. The trial court, therefore, declined to disturb the master's findings of fact and credibility. *See id*.

We find that the trial court abused its discretion in allocating the Greenville Savings debt. The record shows that in his pre-trial statement, Mr. Yeager asserted that the debt was a line of credit with a balance of $3,000. *See* Mr. Yeager's Pre-Trial Statement, 1/28/20, at 6 (unnumbered). However, at the hearing before the master, he testified that there was "only a thousand left on it," although he did not know the balance owed at the time of the parties' separation. *See* N.T., 7/29/20, at 80-81.

On cross-examination, Mr. Yeager was uncertain if the Greenville Savings debt was a loan or a line of credit. *See id*. at 141. Further, when asked what the "line of credit was for," he responded: "[B]efore I started -- before she was in the picture. Because I was putting on another garage on the other side [of the Adamsville home], and I never finished it. Like I said, it's almost -- it has a thousand left on it or something." *Id*. at 130-31.

At the conclusion of the hearing, the master held the record open for the parties to present supplemental documentation. *See id*. at 141-42. Mr. Yeager then submitted a single-page statement indicating that he had a consumer "loan" with a beginning principal of $7,433.24 and that between October 5 and October 30, 2018, and between November 1 and November 30, 2018, he made two payments of $306.07, leaving a principal balance of $6,893.85. The master allocated the consumer loan as a debt incurred during the marriage.[6] *See* Amended Master's Report, 11/2/20, at 5.

Mr. Yeager's testimony did not establish that the Greenville Savings debt accrued jointly. To the contrary, the only evidence in the record concerning the origination of that debt was Mr. Yeager's testimony that he took out the loan to improve the Adamsville home **before** Ms. Yeager "came into the picture." *See* N.T., 7/29/20, at 130-31. Additionally, although the

---

[6] The one-page document Mr. Yeager presented to the master contained his name and address and the amounts described above. However, there was no further information on the document such as original date of the debt or the institution issuing the statement, and hence no evidence that it related to the Greenville Savings debt.

supplemental documentation that Mr. Yeager produced establishes that $6,893.85 was due on **a loan** around the time of the parties' separation in October 2018, the statement contains no further information establishing that the figure relates to a Greenville Savings line of credit or loan, or that Ms. Yeager was equally liable for it.[7] ***Cf. Mundy***, 151 A.3d at 239-40 (rejecting a party's claim that a student debt should have been allocated between the parties where the party failed to present any evidence documenting the use of the loan to substantiate the party's claim that the proceeds of the loan were used for household expenses).

We acknowledge that the trial court owed deference to the master's findings of fact and credibility determinations concerning the Greenville Savings debt. ***See*** Trial Court Opinion, 11/15/21, at 3. However, absent support in the record for the master's findings, we are constrained to vacate that portion of the trial court's decree allocating that debt, and remand to determine when the debt accrued, whether Ms. Yeager was jointly liable for the debt, and, if so, how much remained owing on the debt at the time of separation.

In her final issue, Ms. Yeager contends that the 50-50 division of the marital property was inequitable.

---

[7] Furthermore, if the documentation in fact related to the Greenville Savings debt rather than a different loan, Mr. Yeager's supplemental documentation did not explain how the amount of the debt owed at the time of separation more than doubled from his initial estimate of $3,000, which he testified he had reduced to about $1,000.

23 Pa.C.S.A. § 3502(a), governing the equitable distribution of marital property, provides:

**(a) General rule.**—Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or

assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a). A trial court has broad discretion in fashioning an award of equitable distribution, and as noted above, we review the distribution for an abuse of discretion. *See Hess*, 212 A.3d at 523. The trial court must consider the factors listed in section 3502(a) as guidelines, but no simple formula governs the division of marital property because the method of distribution will depend on the facts of each individual case. *See Wang v. Feng*, 888 A.2d 882, 888 (Pa. Super. 2005).

In her brief before this Court, Ms. Yeager reviews the section 3502(a) factors and asserts that she should have been awarded sixty percent of the marital assets to achieve economic justice. *See* Ms. Yeager's Brief at 22, 24-30. She contends that her contributions to the Adamsville home weigh in her favor and Mr. Yeager has greater opportunities to acquire future assets. *See id*. at 31. Ms. Yeager notes that the master's distribution left Mr. Yeager with substantially more assets, including the Adamsville home, while leaving her with fewer, non-liquid assets, namely, a four-wheeler and her retirement benefits. *See id*. at 30. She contends that the 50-50 division of martial assets is unjust because it left her with limited liquid assets and limited time

- 10 -

to purchase a new home,[8] while Mr. Yeager enjoyed possession of real property that he brought into the marriage, including the Adamsville home and a family campground, as well as a larger retirement account. *See id*. at 30-31.

The trial court denied Ms. Yeager's exception challenging the lack of liquid assets. The court determined that there were few liquid assets for distribution and that the master's report properly analyzed the section 3502(a) factors. *See* Trial Court Opinion, 11/15/21, at 4. The court cited the master's findings that the parties were on relatively equal financial footing as they have comfortable incomes, are in good health, and neither has children. *See id*. The court concluded that based on the lack of liquid assets between the parties and the equalizing payment from Mr. Yeager by a QDRO, the overall distribution was reasonable. *See id*.

As noted by the master, the parties were married for nearly thirteen years, neither party was previously married, and the parties had no children. *See* Amended Master's Report, 11/2/20, at 3. Mr. Yeager was 53 years old at the time of the hearing, and Ms. Yeager was 44 years old. *See id*. Both were in good health and had adequate sources of income. *See id*. Ms. Yeager earned a higher hourly wage than Mr. Yeager, although Mr. Yeager earned more that Ms. Yeager by working overtime. *See id*. The parties maintained

_____

[8] Ms. Yeager notes that she is currently forty-five years old and lives with her parents in a home owned by her brother. *See* Ms. Yeager's Brief at 25.

a middle-class standard of living. *See id*. at 4. The master further noted that Ms. Yeager contributed to the marriage in terms of chores and purchasing items for the Adamsville home, but determined that the lack of evidence of the value of those contributions prevented him from assigning these factors in favor of either party. *See id*. Further, while the master acknowledged that Mr. Yeager left the marriage in better economic circumstances than Ms. Yeager, Ms. Yeager maintained retirement accounts with "significant values." *See id*. As noted above, the master recommended that Mr. Yeager make an equalizing payment by the entry of a QDRO.

Based on the foregoing, we discern no abuse of discretion in the trial court's equitable distribution scheme. Given the lack of liquid assets held by the parties and the equalizing payment by a QDRO, Ms. Yeager has not demonstrated that the overall distribution was unjust. Thus, we affirm the trial court's overall determination that a 50-50 distribution was proper under the circumstances of this case. *See Hess*, 212 A.3d at 523, 525-26.

In sum, we remand this matter for a recalculation of the increase of the value of the Adamsville home and Ms. Yeager's share, if any, of the Greenville Savings debt. We otherwise affirm the 50-50 distribution of the marital property. Accordingly, we affirm the decree in part, vacate in part, and remand for further proceedings consistent with this memorandum.

Decree affirmed in part, vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/2/2022